UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GARY CHAMBERS,

                                        Plaintiff,

                    v.

ROBERT LOMBARDI, *et al.*,

                                        Defendants.

No. 17-CV-7557 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances:</u>

Gary Chambers
Naponoch, NY
*Pro se Plaintiff*

Colleen Kelly Faherty, Esq.
Rebecca Lynn Johannesen, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Pro se Plaintiff Gary Chambers ("Plaintiff"), currently incarcerated at Eastern

Correctional Facility, brings this Action, pursuant to 42 U.S.C. § 1983, against Defendants,

alleging violations of his Fourth, Eighth, and Fourteenth Amendments.  (*See* Second Am. Compl.

("SAC") (Dkt. No. 29).)[1]  Plaintiff claims that Defendants violated his rights when they searched

his vehicle during a vehicle stop, detained him, and strip searched him at a police station.  (*See*

*id.* at 4.)  Before the Court is Defendants' Motion for Summary Judgment (the "Motion").  (*See*

Not. of Mot. (Dkt. No. 78).)  For the reasons explained herein, the Motion is granted.

---

[1] "Defendants" refers to Robert Lombardi ("Lombardi"), Josh Taylor ("Taylor"), Gilberto
Rodriguez ("Rodriguez"), Luc France ("France"), and Scott Fiordaliso ("Fiordaliso").  (*See*
SAC.)

## I.  Background

### A.  Factual Background

The following facts are taken from Defendants' statement pursuant to Local Civil Rule 56.1, (*see* Defs.' Local Rule 56.1 Statement in Supp. of Mot. ("Defs.' 56.1") (Dkt. No. 81)), Defendants' exhibits, (*see* Decl. of Rebecca L. Johannesen, Esq. in Supp. of Mot. ("Johannesen Decl.") (Dkt. No. 80)), as well as Plaintiff's Second Amended Complaint ("SAC"), (*see* SAC), and are recounted in the light most favorable to Plaintiff, the non-movant, *see Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018).  Defendants have sent the required Rule 56.2 Notice to Plaintiff.  (*See* Dkt. No. 82.)[2]

---

[2] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The nonmoving party must then submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  *Id.* at 56.1(b).  "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule."  *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citation and quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (same).  "A pro se litigant is not excused from this rule."  *Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (citation and italics omitted).  Here, Defendants filed and served their 56.1 Statement, (Defs.' 56.1), in addition to a statement notifying Plaintiff of the potential consequences of not responding to the Motion, as required by Local Rule 56.2, (Dkt. No. 82).  Despite this notice, Plaintiff failed to submit a response to Defendants' 56.1 Statement.  Accordingly, the Court may conclude that the facts in Defendants' 56.1 Statement are uncontested and admissible.  *See Brandever*, 2014 WL 1053774, at *3 (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal*, No. 11-CV-9616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).

Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court will "in its discretion opt to conduct an assiduous review of the record," when deciding the instant Motion, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and quotation marks omitted); *see also Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Benefit Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014)

Plaintiff was the subject of a confidential investigation conducted by the New York State Attorney General's Office, with assistance from the New York State Police.  (Defs.' 56.1 ¶ 1; *see also* Decl. of William Charles in Supp. of Mot. ("Charles Decl.") ¶ 3; Decl. of Eladio Herrera in Supp. of Mot. ("Herrera Decl.") ¶ 4; Decl. of Gilberto Rodriguez in Supp. of Mot. ("Rodriguez Decl.") ¶ 4; Decl. of Scott Fiordaliso ("Fiordaliso Decl.") ¶ 3; Decl. of Luc France ("France Decl.") ¶ 3 (Dkt. Nos. 80-6–7, 80-10–12).)  Plaintiff has acknowledged that he was a marijuana dealer in 2014, operating mostly in Massachusetts.  (Defs.' 56.1 ¶ 2; *see also* Johannesen Decl. Ex. 1 ("Pl.'s Dep. Tr.") 73, 135, 256 (Dkt. No. 80-1).)  On November 13, 2014, Supervising Investigator William Charles ("Charles") obtained information from electronic surveillance indicating that Plaintiff would be travelling to New York City later that day to meet with a source and purchase cocaine.  (Defs.' 56.1 ¶ 3; *see also* Charles Decl. ¶ 5.)  Charles informed Investigator Eladio Herrera ("Herrera"), a non-party, about the anticipated deal and that Plaintiff would be travelling in a tan 2020 Lexus with a Massachusetts license plate numbered 579-YD8.  (Defs.' 56.1 ¶¶ 4–5; *see also* Charles Decl. ¶¶ 5–6; Herrera Decl. ¶ 5.)

In anticipation of Plaintiff's expected meeting with his drug source, a surveillance team was dispatched to Queens, New York, consisting of Investigator-Defendants France, Rodriguez,

---

("Although [the] plaintiffs did not file a Rule 56.1 statement, the Court has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response (citation omitted)); *Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-3872, 2013 WL 2922483, at *1 (S.D.N.Y. June 14, 2013) ("[W]here a pro se plaintiff fails to submit a proper . . . Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (citation, italics, and quotation marks omitted)).  The Court will therefore consider and note whether any facts in the record or in Plaintiff's SAC contradict Defendants' 56.1 Statement.

3

and Fiordaliso, along with non-party Investigators Millington, Green, Gaynor, and Cummings. (Herrera Decl. ¶ 6.)  On November 13, 2014, at 8:20 p.m., the surveillance team observed the vehicle described by Charles in front of a restaurant in Queens, New York.  (Defs.' 56.1 ¶ 6; *see also* Herrera Decl. ¶ 8; Rodriguez Decl. ¶ 8; Fiordaliso Decl. ¶ 7; France Decl. ¶ 6.)  Plaintiff testified at his deposition that he met with his drug source inside the restaurant and paid him in exchange for 14.5 pounds of marijuana.  (*See* Pl.'s Dep. Tr. 59–61.)[3]  Plaintiff subsequently placed the marijuana into a hidden compartment located in the dashboard of his vehicle, a modification that he had specifically purchased to avoid detection by law enforcement.  (*Id*. at 69.)  Plaintiff then drove north on the Hutchinson River Parkway.  (*Id*. at 101.)

At approximately 9:25 p.m. on the same day, Lombardi, a New York state police trooper in the K-9 Unit, observed Plaintiff driving his vehicle at 67 miles per hour in a 55 mile-per-hour zone.  (Defs.' 56.1 ¶ 16; *see also* Decl. of Robert Lombardi in Supp. of Mot. ("Lombardi Decl.") ¶¶ 4, 8 (Dkt. No. 80-8).)  Lombardi had been previously instructed by Herrera to conduct patrol in Westchester County and to stop Plaintiff's vehicle if sufficient cause arose to initiate a traffic stop.  (Lombardi Decl. ¶ 5.)  Plaintiff's driving speed was detected by Lombardi's fixed mount radar device in his police vehicle, which he had just calibrated at the beginning of his shift that day.  (*Id*. ¶¶ 8–9.)  Taylor, another New York State police trooper employed in the K-9 Unit, assisted Lombardi with the vehicle stop.  (Defs.' 56.1 ¶ 17; *see also* Decl. of Josh Taylor in Supp. of Mot. ("Taylor Decl.") ¶¶ 3, 5 (Dkt. No. 80-9).)

---

[3] Defendants believe the drug exchange was actually cocaine, and indeed, Plaintiff was later convicted for cocaine related felonies, (*see* Defs.' 56.1 2 n.1; *see also* Johannesen Decl. Ex. 13 ("Indictment"); *id*. Ex. 14 ("Cert. of Disposition") (Dkt. Nos. 80-13–14).)  However, the type of drug is not relevant to the disposition of the issues presented in this Motion, and Defendants have stated that they accept Plaintiff's statements as true for the purposes of this Motion.  (*See* Defs.' 56.1 2 n.1.)

Upon stopping Plaintiff's vehicle, Lombardi asked Plaintiff about the origin and destination of his trip.  (Defs.' 56.1 ¶ 19.)  Although Plaintiff initially said he had been in Atlantic City for two days and was on his way to Massachusetts, a few moments later, Plaintiff told Lombardi that he was in Atlantic City for one day and was on his way back home to Albany.  (*Id*. ¶ 20; *see also* Lombardi Decl. ¶ 14.)  Lombardi was also aware that the surveillance team had observed Plaintiff in New York City earlier that day.  (Defs.' 56.1 ¶ 21; *see also* Lombardi Decl. ¶ 15.)  Because of Plaintiff's contradictory statements and Lombardi's own, independent knowledge regarding Plaintiff's whereabouts, Lombardi requested consent to search Plaintiff's vehicle.  (Defs.' 56.1 ¶ 22; *see also* Lombardi Decl. ¶ 16.)  Plaintiff consented.  (Defs.' 56.1 ¶ 23.)

Lombardi and Taylor, with their K-9s, Dora and Rato, respectively, walked around the exterior of Plaintiff's vehicle.  (*See* Defs.' 56.1 ¶ 24; *see also* Taylor Decl. ¶¶ 7, 9.)  Both K-9s gave positive alerts for the presence of drugs.  (*See* Defs.' 56.1 ¶ 24; *see also* Taylor Decl. ¶¶ 7, 9; Lombardi Decl. ¶¶ 18, 20.)  Dora gave positive alerts for drugs on the exterior near the rear door and in the interior near the rear of the front driver sear and rear seat floorboard area.  (Lombardi Decl. ¶¶ 17–18.)  Rato gave positive alerts for drugs on the exterior near the driver's seat door and in the interior near the driver seat's rear floorboard and center console area.  (Taylor Decl. ¶ 9.)  Lombardi proceeded to conduct a hand search of the interior of the vehicle—which does not involve disassembly of the car—but did not locate any drugs.  (Defs.' 56.1 ¶ 28; *see also* Lombardi Decl. ¶ 23.)  Lombardi reported the situation to Herrera and explained that due to rainy weather and their position on the side of the highway, further searches would need to take place elsewhere.  (Lombardi Decl. ¶ 24.)  Herrera then told Lombardi that he should take Plaintiff to police barracks, identified as "SP Somers" by Defendants.  (*Id*. ¶ 25.)

Accordingly, at around 11:10 p.m., Lombardi escorted Plaintiff to SP Somers, and Plaintiff's vehicle was separately transported there as well. (Defs.' 56.1 ¶ 29.) At SP Somers, Lombardi and Taylor continued to inspect Plaintiff's vehicle, where they observed wires coming from a panel and into the bottom of the dashboard. (*Id.* ¶ 30.) According to Lombardi, his training instructed him that such wires are indicative of a hidden compartment where drugs could be stored. (Lombardi Decl. ¶ 28.) This level of inspection would have required disassembly of the car. (Defs.' 56.1 ¶ 32.) Herrera contacted Charles to see whether they could obtain a search warrant to conduct the disassembly. (*Id.* ¶ 33; *see also* Herrera Decl. ¶ 19; Charles Decl. ¶ 16.) Charles was eventually advised by an Assistant Attorney General that a warrant would not be sought, and that Plaintiff should be released without further inspection of his vehicle, which later happened. (Defs.' 56.1 ¶¶ 37, 39.)

In the meantime, before Charles was instructed to release Plaintiff, Plaintiff was interviewed by Rodriguez, Fiordaliso, and France at around 12:15 a.m. (Defs.' 56.1 ¶ 34.) Plaintiff told them that he was travelling from Atlantic City. (*Id.*; *see also* Rodriguez Decl. ¶ 14; Fiordaliso Decl. ¶ 13.) However, because the interviewers were part of the surveillance team, they knew that Plaintiff had just come from Queens. (Defs.' 56.1 ¶ 35; *see also* Rodriguez Decl. ¶ 14; Fiordaliso Decl. ¶¶ 12–13; France Decl. ¶ 14.) During the interview, Fiordaliso asked Plaintiff to lift his shirt, and Plaintiff took his shirt off. (Fiordaliso Decl. ¶ 14.) Fiordaliso asked Plaintiff to "continue," and Plaintiff removed all his clothing. (*Id.*) According to the interviewers, none of them made physical contact with Plaintiff at all. (*See* Rodriguez Decl. ¶ 15; Fiordaliso Decl. ¶¶ 14–15; France Decl. ¶ 15.) Because of Charles's conversation with an Assistant Attorney General, Plaintiff was subsequently released shortly after the interview, at around 1:30 a.m. (*See* Rodriguez Decl. Ex. E ("Rodriguez Police Mem."); France Decl. Ex. G

("France Police Mem."); Fiordaliso Ex. F ("Fiordaliso Police Mem.") (Dkt. Nos. 80-10–12).)
Based on the aforementioned facts, it is undisputed that Plaintiff was within the company of
police officers from approximately 9:25 p.m. to 1:30 a.m.  Indeed, Plaintiff alleges the same
timeframe in his SAC.  (SAC 4–5.)

Plaintiff alleges that his injuries from the encounter were not physical in nature but rather
psychological and emotional.  (*Id*. at 5.)  Plaintiff claims that he feared for his life when he was
arrested and that he was humiliated by being asked to take his clothes off.  (*Id*.)  Based on the
foregoing, Plaintiff seeks $400,000 from all Defendants, as well as an apology.  (*Id*.)

B.  Procedural History

Plaintiff filed his original Complaint on October 2, 2017.  (*See* Compl. (Dkt. No. 2).)
Plaintiff's Application to proceed in forma pauperis ("IFP") was granted on January 18, 2018.
(*See* Order (Dkt. No. 9).)  Plaintiff filed an Amended Complaint on November 3, 2017, and
Rodriguez answered on June 22, 2018.  (*See* Am. Compl.; Rodriguez First Ans. (Dkt. Nos. 8,
25).)  Plaintiff filed the SAC on July 25, 2018.  (*See* SAC.)  Rodriguez Answered again on
August 8, 2018.  (*See* Rodriguez Second Ans. (Dkt. No. 31).)  Plaintiff attempted to file a Third
Amended Complaint on September 18, 2018, but the Court noted in a Memo Endorsement that it
rejected the Third Amended Complaint because Plaintiff did not seek leave to file it.  (*See* Dkt.
No. 43.)  Lombardi and Taylor Answered on November 13, 2018, and France Answered on
November 26, 2018.  (*See* Lombardi & Taylor Ans.; France Ans. (Dkt. Nos. 48–49).)  A Case
Management Plan and Scheduling Order was adopted on December 11, 2018.  (*See* Order (Dkt.
No. 50).)  Fiordaliso Answered on May 16, 2019.  (*See* Fiordaliso Ans. (Dkt. No. 65).)

In response to a Pre-Motion Letter from Defendants, the Court set a briefing schedule for
the instant Motion.  (*See* Dkt. No. 69.)  On September 3, 2019, Defendants filed their moving

papers.  (*See* Not. of Mot.; Johannesen Decl.; Defs.' 56.1; *see also* Defs.' Mem. of Law in Supp.

of Mot. ("Defs.' Mem.") (Dkt. No. 79).)  Defendants also filed the requisite Local Rule 56.2

Notice to pro se litigants opposing a summary judgment motion.  (*See* Dkt. No. 82.)  Plaintiff

filed an Opposition on October 7, 2019.  (*See* Pl.'s Mem. of Law in Opp'n to Mot. ("Pl.'s

Mem.") (Dkt. No. 83).)  Defendants filed their Reply on October 23, 2019.  (*See* Defs.' Reply

Mem. of Law in Supp. of Mot. ("Defs.' Reply Mem.") (Dkt. No. 84).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same).  "In determining whether summary judgment is appropriate," a court must

"construe the facts in the light most favorable to the non-moving party and . . . resolve all

ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653

F.3d 156, 164 (2d Cir. 2011) (citation and quotation marks omitted); *see also Borough of Upper

Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014)

(same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy

Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citation omitted); *see also

Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it

ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an

essential element of the nonmovant's claim," in which case "the nonmoving party must come

forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to

avoid summary judgment." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (citation, alteration and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . ., [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (citation and quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (citation and quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (citation and quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc*., 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). However, a district court

should consider "only evidence that would be admissible at trial."  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) (citation omitted).  "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'"  *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage."  *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (citation omitted)).  Where the evidence presents "a question of 'he said, she said,'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010) (citation omitted); *see also Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017) (noting that "it is not the role of the [c]ourt at summary judgment to resolve [a] factual clash."); *Bale v. Nastasi*, 982 F. Supp. 2d 250, 258–59 (S.D.N.Y. 2013) (stating that "[w]here each side . . . tells a story that is at least plausible and would allow a jury to find in its favor, it is for the jury to make the credibility determinations and apportion liability, and not for the court." (citation omitted)). And, even if the non-movant's evidence is "thin, [a non-movant's] own sworn statement is adequate to counter summary judgment . . . ."  *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (citation omitted); *see also id.* at 290 (holding that "[t]he credibility of [Plaintiff's]

statements and the weight of contradictory evidence may only be evaluated by a finder of fact"
(citation omitted)).

Finally, the Second Circuit has instructed that when a court considers a motion for
summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham*, 848
F.2d at 344; *accord Mercado v. Div. of N.Y. State Police*, No. 96-CV-235, 2001 WL 563741, at
*7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se
litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest,"
*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation, italics, and
quotation marks omitted).  Moreover, "the failure to oppose a motion for summary judgment
alone does not justify the granting of summary judgment."  *Vt. Teddy Bear Co.*, 373 F.3d at 244;
*see also Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an
examination of the legal validity of an entry of summary judgment should . . . be[] made in light
of the opposing party's pro se status" (italics omitted)).  "Nonetheless, proceeding pro se does
not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se
party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for
summary judgment."  *Teamsters Local 210*, 27 F. Supp. 3d at 351 (citation, alteration, italics,
and quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL
3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

B.  Analysis

Defendants argue that not all Defendants were personally involved in every aspect of the
incident; that no Fourth Amendment claim survives because the stop and search of Plaintiff's
vehicle was based on probable cause and because Plaintiff consented to the search; that no claim
of illegal detainment survives because there was probable cause to detain Plaintiff; that

Plaintiff's strip search did not violate any constitutional rights; that there is no evidence to support any potential excessive force claim; and that Defendants are entitled to qualified immunity.  (*See generally* Defs.' Mem.)  The Court addresses the arguments as needed.

### 1. Personal Involvement

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citations and emphasis omitted).  In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above.  *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Defendants are correct that the record reveals that not every Defendant was involved in every aspect of the underlying incidents of which Plaintiff complains.  For example, only Lombardi and Taylor and *not* Rodriguez, Fiordaliso, and France were involved in pulling over Plaintiff's vehicle or conducting the initial searches of his vehicle.  (*See* Defs.' 56.1 ¶¶ 13–33.)

And Lombardi and Taylor, in turn, were not involved in interviewing Plaintiff once Plaintiff arrived at SP Somers. (*See id*. ¶¶ 34–39.) Herrera instructed Lombardi to pull over Plaintiff's vehicle if there was sufficient cause to do so, (Lombardi Decl. ¶ 5), but Herrera is not named as a defendant in the SAC, (*see* SAC). Accordingly, the Court will consider the merits of any potential claims regarding each segment of the incident only as to those individuals who were involved in the segment at issue.

### 2.  Fourth Amendment Claims

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment's protections require "an officer making a traffic stop [to] have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *United States v. Wilson*, 699 F.3d 235, 242 (2d Cir. 2012) (citation and quotation marks omitted). Probable cause exists when an officer "has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008) (citation and quotation marks omitted). The Second Circuit has noted that "[w]hen an officer observes a traffic offense—however minor—[the officer] has probable cause to stop the driver of the vehicle." *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) (citation and quotation marks omitted). The officer must have "a particularized and objective basis for suspecting the particular person stopped of criminal activity or a traffic violation," but "[t]his objective inquiry disregards the officer's subjective motivation and asks instead whether a reasonable officer would suspect unlawful activity under the totality of the circumstances."

13

*United States v. Diaz*, 802 F.3d 234, 238–39 (2d Cir. 2015) (citations and quotation marks

omitted).  Importantly, "as long as a valid basis for a detention and search exists, it is not

rendered invalid by the fact that police resort to a pretext for one purpose or another to continue

that detention and search."  *United States v. Pascarella*, 84 F.3d 61, 72 (2d Cir. 1996) (citation,

alterations, and quotation marks omitted); *see also Holeman v. City of New London*, 425 F.3d

184, 109 (2d Cir. 2005) (noting that "the actual motivations of the individual officers involved in

the stop play no role in the analysis" (quotation marks omitted) (quoting *Whren v. United States*,

517 U.S. 806, 813 (1996))).

Here, Lombardi observed Plaintiff driving at 67 miles per hour in a 55 mile-per-hour

zone.  (*See* Defs.' 56.1 ¶ 16.)  Lombardi used a fixed mount radar to measure Plaintiff's speed, a

device that he had just calibrated prior to starting his shift that day.  (*Id*. ¶ 15.)  Travelling over

55 miles per hour, except where authorized to do so, is a violation of New York State Vehicle

and Traffic Law.  *See* N.Y. Veh. & Traf. Law § 1180(b) ("Except as provided[,] . . . no person

shall drive a vehicle at a speed in excess of [55] miles per hour.").  Plaintiff submits nothing to

suggest that he was not speeding or that this instance of speeding fell into one of the articulated

exceptions under New York law.  Therefore, Plaintiff's speeding was "a specific and articulable

fact" providing Lombardi with sufficient cause to stop Plaintiff.  *Scopo*, 19 F.3d at 781 (citation

omitted); *see also United States v. Bayron David Figueroa*, 425 F. App'x 15, 17 (2d Cir. 2011)

("It is well settled in th[e Second] Circuit that an observed traffic violation is a specific and

articulable fact sufficient to justify the search and seizure of a vehicle under the Fourth

Amendment, and that speeding constitutes a traffic violation under New York law." (citations

and quotation marks omitted)).  Moreover, it is of no consequence that Lombardi knew that

Plaintiff's vehicle was suspected to contain drugs and that Herrera had instructed Lombardi to

14

pull Plaintiff over if sufficient cause to do so arose.  Second Circuit law makes clear that police

may "resort to a pretext for one purpose or another" to effectuate a detention and search.

*Pascarella*, 84 F.3d at 72 (citation and quotation marks omitted); *see also Whren*, 517 U.S. at

813 (noting that "a traffic-violation arrest . . . would not be rendered invalid by the fact that it

was a mere pretext for a narcotics search" (citation and quotation marks omitted)); *United States*

*v. Dhinsa*, 171 F.3d 721, 724–25 (2d Cir. 1998) ("[A]n officer's use of a traffic violation as a

pretext to stop a car in order to obtain evidence for some more serious crime is of no

constitutional significance.").  Plaintiff's argument that he was never issued a traffic ticket, (*see*

Pl.'s Mem. 5),[4, 5] also holds no weight here.  *See United States v. Triana-Mateus*, No. 98-CR-

958, 2002 WL 562649, at *4 (S.D.N.Y. Apr. 15, 2002) ("The fact that officers may not issue a

traffic ticket after making a stop does not change the legitimacy of the original stop." (citation

omitted)); *see also United States v. Little*, 945 F. Supp. 79, 82 (S.D.N.Y. 1996) (noting that

"[t]here is no requirement that the police arrest a defendant for every crime he committed"),

*aff'd*, 133 F.3d 908 (2d Cir. 1998).

Following the traffic stop, Lombardi and Taylor conducted a search of Plaintiff's vehicle

with assistance from their K-9s.  "In general, law enforcement officials, pursuant to the [F]ourth

[A]mendment, must obtain a search warrant in order to seize an individual's property."  *Scopo*,

19 F.3d at 782 (citation omitted).  However, there are well-established exceptions to the warrant

---

[4] The Court refers to the ECF-stamped page numbers when citing to Plaintiff's
Opposition Memorandum.

[5] Plaintiff appears to submit the lack of a traffic ticket as further evidence that the arrest
was pretextual.  But given the surveillance team's knowledge that Plaintiff was likely
transporting drugs and their instructions to Lombardi to look out for Plaintiff, Defendants have
all but admitted that the traffic stop *was* pretextual.  (*See, e.g.*, Herrera Decl. ¶¶ 6–11.)  As
discussed however, none of this is *legally* significant because pretextual stops are constitutional
as long as sufficient cause existed to execute the underlying traffic stop.

requirement, which "include searches on consent." *McCardle v. Haddard*, 131 F.3d 43, 48 (2d

Cir. 1997). Plaintiff does not dispute that he consented to Lombardi and Taylor's search of his

vehicle. (*See* Pl.'s Dep. Tr. 144 ("I consented to his search even though I know I didn't have to .

. . .").) However, Plaintiff avers that he was generally fearful and that was why he consented to

the search. (*See id.*) Generalized fear or intimidation alone is not enough to invalidate his

consent or render the search unlawful. Although valid consent "may not be the product of duress

or coercion," *United States v. Sanchez*, 635 F.2d 47, 58 (2d Cir. 1980), general "concern to

mitigate the full consequences of legal proceedings or in the hope of escape from the law

entirely" does not qualify as duress, and consent is "invalid under the Fourth Amendment only if

the officers have transgressed civilized standards," *id*. at 55 (citation omitted); *see also United

States v. Snype*, 441 F.3d 119, 131 (2d Cir. 2006) (finding that consent was given voluntarily for

a search of a home where the individual testified that "she knew she was not required to give

consent" (footnote omitted)). Like *Snype*, *id.*, Plaintiff has testified that he knew he did not have

to consent to the search, (*see* Pl.'s Dep. Tr. 144). Nothing in the record suggests that Lombardi

or Taylor physically threatened Plaintiff or otherwise "transgressed civilized standards" in any of

their interactions with him, including by asking Plaintiff whether they could search his vehicle.

*Sanchez*, 635 F.2d at 55; *see also United States v. Lucas*, No. 17-CR-129, 2018 WL 6313469, at

*4 (W.D.N.Y. Sept. 7, 2018) (finding that consent to search the criminal defendant's bags was

voluntarily given, even though the defendant later said he "felt cornered" by the police officers

where the defendant "does not allege that the officers surrounded him, displayed their weapons[,]

or used any force or intimidation when they asked for consent to search his bags"), *adopted by*

2018 WL 5118654 (W.D.N.Y. Oct. 22, 2018); *United States v. Peña Ontiveros*, 547 F. Supp. 2d

323, 331 (S.D.N.Y. 2008) (noting that even "the fact that a person is in custody or has been

subjected to a display of force does not automatically preclude a finding of voluntariness"
(quotation marks omitted) (collecting cases)), *aff'd*, 409 F. App'x 441 (2d Cir. 2011).
Accordingly, Plaintiff gave his consent to search his car, and therefore, the subsequent search
was constitutional.

In any event, even without consent, Defendants had authority to conduct a search of
Plaintiff's automobile incident to the traffic stop "based on probable cause to believe the vehicle
contain[ed] contraband or evidence . . . ." *McCardle*, 131 F.3d at 48 (collecting cases).
Lombardi was aware that Herrera and the rest of the surveillance team had just observed the
exact same vehicle, with the same license plates, leave a restaurant in Queens, New York, which,
through information collected via electronic surveillance, was likely to be the site of a drug deal.
(*See* Herrera Decl. ¶¶ 5, 7–8, 11.)  Upon questioning Plaintiff regarding the origin and
destination of his trip, Plaintiff gave contradictory answers, both of which Lombardi knew to be
false, because of the surveillance information he had just received from Herrera.  (*See* Lombardi
Decl. ¶¶ 14–15.)  These circumstances, when viewed as a whole, meet the threshold of probable
cause necessary to conduct an automobile search incident to a traffic stop.  *See United States v.
Peterson*, 100 F.3d 7, 11 (2d Cir. 1996) (holding that police officers had reasonable suspicion to
ask a criminal defendant about the content of his knapsack where the officers "noted the
inconsistency in [the defendant's] statements" in response to certain questions); *United States v.
Jenkins*, No. 15-CR-142, 2017 WL 9485700, at *4–5 (W.D.N.Y. Oct. 23, 2017) (finding that
police officer had reasonable suspicion to "extend [a vehicle] stop for investigatory purposes"
where the police officer, inter alia, observed that the driver of the car "gave confusing answers"
in response to the police officer's questions (collecting cases)), *adopted by* 2018 WL 324901
(W.D.N.Y. Jan. 8, 2018).  Therefore, even if Plaintiff had not given consent or even if that

consent could be considered invalid in some way, Lombardi and Taylor still had sufficient legal

grounds to search Plaintiff's car.

Once Plaintiff's car was searched, Lombardi and Taylor noted that both of their K-9s

gave positive alerts for the presence of drugs, and yet hand searches did not reveal the presence

of any drugs.  (Lombardi Decl. ¶¶ 18–20, 22; Taylor Decl. ¶¶ 7, 9.)[6]  Furthermore, it was raining,

and the individuals were located on the side of a highway.  (*See* Lombardi Decl. ¶ 24.)  These

circumstances provided the officers with sufficient cause to transport Plaintiff and his vehicle to

a more secure location for further searches.  The Supreme Court has instructed that there is no

"rigid time limitation on [investigative] stops."  *United States v. Sharpe*, 470 U.S. 675, 685

(1985).  Indeed, in order for police to "investigat[e] possible criminal activity . . . , the police

must under certain circumstances be able to detain the individual for longer than [a] brief time

period."  *Id.* at 685–86 (citation and quotation marks omitted).  Given the positive alert given by

both Lombardi's and Taylor's K-9s, conducted during a search to which Plaintiff consented, the

requisite circumstances allowing for further detention were present.  *See United States v. Green*,

No. 14-CR-6038, 2017 WL 9730254, at *10–11 (W.D.N.Y. Nov. 3, 2017) (finding that, after a

lawful search to which the criminal defendant consented, positive alerts from a trained K-9 gave

the police officer probable cause to extend the investigative stop), *adopted by* 2018 WL 1136928

(W.D.N.Y. Mar. 2, 2018), *appeal filed*, No. 19-1027 (2d Cir. Apr. 17, 2019); *Henry v. Tracy*,

---

[6] Although Plaintiff conclusorily states in his Opposition that the K-9s did not give positive alerts, he provides no basis for his understanding of K-9 signals or the underlying behavior of the K-9s.  (*See* Pl.'s Mem. 3.)  In contrast, Lombardi and Taylor have provided sworn statements indicating that they have received training on working with drug-detecting dogs and can identify positive alerts.  (*See* Lombardi Decl. ¶¶ 4, 21; Taylor Decl. ¶¶ 3, 9–10.)  Despite his pro se status, the Court does not need to provide Plaintiff with credence on conclusory, unsupported assertions like this one.  *See Parker v. Fantasia*, 425 F. Supp. 3d 171, 183–84 (S.D.N.Y. 2019) (nothing that "a pro se party's bald assertions unsupported by evidence are insufficient to overcome a motion for summary judgment" (citations, alteration, and quotation marks omitted)).

No. 10-CV-800, 2014 WL 3558021, at *9 (W.D.N.Y. July 18, 2014) ("Here, the evidence established that [the] defendants had probable cause to believe contraband was in the vehicle, from the positive hit of the detection dog, [the plaintiff's] nervous and furtive reactions, and the other indicia discussed for this sustained stop and search."), *aff'd*, 629 F. App'x 26, 29 (2d Cir. 2015) ("During that consent search, the drug-sniffing dog alerted, creating probable cause for a continued search."). Therefore, Plaintiff's transportation to SP Somers and Lombardi and Taylor's continued searches of his vehicle were also constitutional.

To the extent Plaintiff seeks to claim that his strip search at SP Somers was a violation of his Fourth Amendment rights, such a claim also fails. "The Fourth Amendment requires an individualized reasonable suspicion that a misdemeanor arrestee is concealing . . . contraband based on . . . the particular characteristics of the arrestee and/or the circumstances of the arrest before she may be lawfully subjected to a strip search." *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008) (citation, alteration, and quotation marks omitted). "A reasonable suspicion of wrongdoing is something stronger than a mere hunch, but something weaker than probable cause." *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997) (citation and quotation marks omitted). Here, the circumstances surrounding Plaintiff's traffic stop and subsequent detainment at SP Somers provided "individualized suspicion, specifically directed to [Plaintiff]" to justify a strip search. *Hartline*, 546 F.3d at 100 (citation omitted). By the time Plaintiff was strip searched, the surveillance team had tracked him from a restaurant in Queens and had understood from electronic surveillance that the meeting was likely a drug deal; the arresting officers had received inconsistent answers from Plaintiff regarding his point of origin and knew they were both inconsistent with information from the surveillance team; the K-9s had both given positive alerts for the presence of drugs in Plaintiff's vehicle; and the arresting officers were unable to

uncover the drugs in the vehicle through a hand search.  (*See* Defs.' 56.1 ¶¶ 3, 6–7, 20, 26–28.)
These circumstances provided particularized suspicion that Plaintiff might have been carrying
drugs on his person, rendering the strip search lawful.  *See United States v. Asbury*, 586 F.2d
973, 976–77 (2d Cir. 1978) (stating that, inter alia, an arrestee's excessive nervousness, unusual
conduct, or an informant's tip may be factors that lead to reasonable suspicion justifying a strip
search (collecting cases)); *United States v. Gonzalez*, No. 08-CR-363, 2009 WL 613201, at *7–8
(S.D.N.Y. Mar. 4, 2009) (finding that strip search was constitutional where the police had
reliable information that the arrestee was involved in a planned robbery but the investigating
officers had not been able to find any contraband at the time of his arrest), *aff'd*, 441 F. App'x 31
(2d Cir. 2011), and *aff'd*, 470 F. App'x 2 (2d Cir. 2012); *Bradley v. Village of Greenwood Lake*,
376 F. Supp. 2d 528, 536 (S.D.N.Y. 2005) (finding that strip search was constitutional where an
informant had notified police that the plaintiff had heroin and the police were unable to find
weapons or drugs on the plaintiff when they initially arrested him); *Kane v. United States*, 962 F.
Supp. 27, 30 (E.D.N.Y. 1997) (finding a strip search was based on particularized, reasonable
suspicion where the plaintiff, inter alia, demonstrated "recalcitrance in answering questions and
refusal to cooperate with the inspectors' search, as well as her general evasiveness," even though
such behavior was "perhaps understandable").

### 3.  Excessive Force Claim

To the extent Plaintiff seeks to claim a violation of his constitutional rights due to
excessive use of force, the Court can simply discern no facts that would support such a claim.
"Claims that law enforcement officers have used excessive force in the course of an arrest,
investigatory stop, or other seizure of a free citizen [are] analyzed under the Fourth Amendment
and its reasonableness standard."  *Usavage v. Port Auth. of N.Y. & N.J.*, 932 F. Supp. 2d 575,

591 (S.D.N.Y. 2013) (citation, alteration, and quotation marks omitted).  "[T]he reasonableness question is whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Mickle v. Morin*, 297 F.3d 114, 120 (2d Cir. 2002) (citation omitted).  Accordingly, "courts should examine whether the use of force is objectively unreasonable in light of the facts and circumstances confronting them."  *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (citation and quotation marks omitted).  "Generally, the force used by the [d]efendant must be more than de minimis in order for an excessive force claim to be actionable."  *Musso v. City of New York*, No. 05-CV-2511, 2008 WL 3200208, at *4 (E.D.N.Y. July 24, 2008) (citation, alterations, and quotation marks omitted).

Here, there simply was no use of force, even by Plaintiff's account of events.  Plaintiff himself acknowledges that he sustained "no physical injuries" and only alleges "psychological and emotional" ones.  (SAC 5.)  Moreover, Plaintiff does not allege that any Defendant even touched him.  (*See id*.)  In response to the instant Motion, Plaintiff once again only refers to the purported unconstitutionality of his arrest and strip search.  (*See* Pl.'s Mem. 6.)  Plaintiff's account is consistent with Defendants' assertions that no one touched Plaintiff during his strip search or at any other point during his detainment at SP Somers.  (*See* Defs.' 56.1 ¶ 36.)[7]  Without *any* evidence in the record of any use of force at all, any excessive force claim must also be dismissed.  Indeed, more severe actions that did have physical consequences on other

_____

[7] To the extent Plaintiff seeks to establish an excessive force claim based on the allegation that he was "cuffed to a wall," (SAC 5) such a claim fails because Plaintiff did not allege or provide any evidence that "(1) the handcuffs were unreasonably right; (2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists."  *Pateman v. City of White Plains*, No. 17-CV-6156, 2020 WL 1497054, at *16 (S.D.N.Y. Mar. 25, 2020) (citation, alterations, and quotation marks omitted).

plaintiffs have been held not to constitute excessive force under the Fourth Amendment. *See Rodriguez v. Village of Ossining*, 918 F. Supp. 2d 230, 238 (S.D.N.Y. 2013) (holding that the defendant "did not use excessive force when the grabbed [the p]laintiff's arm to try to remove her from the vehicle" in part because the "undisputed facts indicate that [the] use of force" only resulted in a scratch, which "was de minimis and therefore not actionable" (italics omitted)); *Lemmo v. McKoy*, No. 08-CV-4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) (explaining that even physical injuries, such as "short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and . . . superficial scratches with a cut inside the mouth" have all been held to be de minimis (citations omitted)). Therefore, to the extent Plaintiff seeks to allege an excessive force claim, it is also dismissed.

III.  Conclusion[8]

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment.

Granting this Motion resolves the case in Defendants' favor.  The Clerk of Court is respectfully

directed to terminate the pending Motion, (Dkt. No. 78), enter judgment for Defendants, and

close this case.[9]  The Clerk of Court is also requested to mail a copy of this Opinion & Order to

Plaintiff.

SO ORDERED.

DATED:        May 1, 2020
              White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[8] Because the Court has disposed of the Motion on its merits and concluded that no constitutional violation took place, the Court does not need to and will not engage in a qualified immunity analysis.

[9] Rodriguez, France, and Fiordaliso are mistakenly listed as "terminated" Defendants on the Docket, and Charles and Herrera are mistaken listed as active Defendants on the Docket. (*See* Dkt.)  The Court declined to accept Plaintiff's Third Amended Complaint because Plaintiff never sought leave to file it.  (*See* Dkt. No. 43.)  Charles and Herrera were listed as defendants in the Third Amended Complaint, and France was not listed as a defendant.  However, any changes within the Third Amended Complaint should never have been treated as operative because the Court never accepted that pleading.  Defendants were therefore correct to move on behalf of Rodriguez, Lombardi, Taylor, France, and Fiordaliso—the only operative defendants in this Action—and granting this Motion as to them resolves the case in its entirety.

23